IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Adrienne Lemon, Sr., | ) | |
| | ) | C/A No.: 3:10-cv-2758-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Sheriff of Sumter County, Trevor | ) | |
| Brown, Wayne Dubose, and William | ) | |
| Welch, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on Defendants' renewed and supplemented motion to strike emotional damages (ECF No. 104) and Defendants' motion for summary judgment (ECF No. 105). The court held a hearing on February 2, 2012. After considering the written materials submitted and the arguments of counsel, the court grants in part and denies in part Defendants' motion for summary judgment and also grants in part and denies in part Defendant's motion to strike.

I.    FACTUAL AND PROCEDURAL BACKGROUND

This 42 U.S.C. § 1983 case arises from an incident on October 3rd, 2008 involving Adrienne Lemon (Plaintiff) and deputies of the Sheriff of Sumter County (Defendants). Though he was a student at Francis Marion, Plaintiff was in Sumter at that time to visit his grandmother. At the time of the encounter, Plaintiff was driving his car with Gloria Jenkins and Major Kennedy as passengers. Plaintiff had taken Jenkins to the store to let her make a withdrawal from an ATM.

1

As they were returning to the motel where Jenkins was staying, several of the Defendants pulled Plaintiff over. They approached the vehicle and asked the occupants to put their hands out of the window. The officer approaching the car[1] had a gun in his hand. The officers initially informed Plaintiff that they pulled him over for a traffic violation. Subsequently, they informed him that he had been pulled over on the basis of information obtained from an anonymous tip.

In fact, the information had come from Jenkins. Officer Brown alleges that he had used Jenkins as an informant in the past, and as recently as the night before. Jenkins candidly states that she had just been released from the hospital, was "high" at the time, and had orchestrated the events in hope of obtaining more money to use to obtain drugs. Jenkins could not recall whether she had worked with Dubose the night before. (Jenkins Dep. 34:15–35:15, 13:13–18, Oct. 25, 2011, ECF No. 105-12).

Officer Dubose asked Plaintiff to exit the vehicle, and he then conducted a pat down of Plaintiff. The other officers asked Kennedy and Jenkins to exit the car. The Plaintiff, in response to Dubose's questions, informed them that he did not have drugs in the car and did not consent to a search of his vehicle. When a second officer approached with a canine, Plaintiff informed the officer that he was scared of dogs. The officers allowed him to get back into the car while the canine conducted a sweep. The Plaintiff did not see the dog sit—the signal that it smelled drugs. The officers allege that the dog alerted on the car, and asked the Plaintiff to exit the vehicle. They again conducted a pat down of Plaintiff.

---

[1] Officer Dubose has been identified as the officer.

2

Plaintiff states that the officers then searched his car for about an hour. Plaintiff states that a group of ten to fifteen people at the motel watched. During this time, Defendants again asked Plaintiff if he had any drugs, which he denied. Plaintiff states that the officers then asked him to pull down his pants so they could determine if he had any drugs between his legs. Plaintiff states that the officer had his hand on his holstered pistol at the time he asked this question. Plaintiff states that the officer made him pull down both his pants and underpants, such that he his genitals were fully exposed to passing motorists as well as the people at the motel. Numerous witnesses testify to seeing Lemon with his pants or underpants pulled down.[2] Defendants deny that such a strip search occurred.

The strip search failed to produce any drugs, and no drugs were found during the search of Plaintiff's car. The officers, however, did discover drug paraphernalia in Ms. Jenkins purse. Plaintiff alleges the entire stop lasted two to three hours. The Defendants assert the stop lasted no more than forty (40) minutes. Other witnesses also attest that the stop lasted somewhere between a half hour and an hour.

Plaintiff filed the present action in the Sumter County Court of Common Pleas and Defendants removed the action to this court. Plaintiff initially listed the City of Sumter Police Department, the Sumter County Sheriff's Department, and John Doe and Richard Roe as defendants. The parties dismissed the City of Sumter Police Department and John Doe, in his capacity as an officer of the City of Sumter Police Department by stipulation

---

[2] Roshawna Pack Dep. 7:1–23:23, Feb. 16, 2011, ECF No. 106-7; Donnie Scarborough Dep. 19:1–20:25, Feb. 16, 2011, ECF No. 106-5; Gloria Jenkins Dep. 15:2–20, Oct. 25, ECF No. 106-4; Major Kennedy Dep. 26:24–27:19, 36:17–38:14, 41:9–24, Feb. 16, ECF No. 106-6.

(ECF No. 44).  After the case had progressed, the court allowed the plaintiff to amend his complaint to list the correct parties as Defendants (ECF No. 71).  Plaintiff's amended complaint (ECF. No. 74) lists the Sheriff of Sumter County, and the individual officers, Trevor Brown, Wayne Dubose, and William Welch, as defendants.

Plaintiff asserts the following causes of action against the Defendants:  False Imprisonment, Negligence and Gross Negligence, Defamation, Assault, Battery, Negligent Hiring and Supervision, and a claim under 42 U.S.C. § 1983 for False Arrest and Confinement.  Defendant filed a motion to strike all references and requests for damages related to emotional distress (ECF No. 43).  The court held that motion in abeyance until discovery was completed.  Defendants have renewed and supplemented that motion (ECF No. 104) and have also moved for summary judgment as to all of the Plaintiff's claims (ECF No. 105).

### II.   MOTION TO STRIKE

#### a.  Legal Standard

Upon motion by a party, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Despite the "broad discretion" afforded to district courts under this rule, "striking a party's pleadings is an extreme measure" and thus such motions are "viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation marks and citations omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th

Cir. 2007) (noting that district court "was aware" that motions to strike under rule 12(f) "are to be granted infrequently").

### b. Discussion

Defendants ask this court to strike all references and requests for damages related to emotional distress from Plaintiff's complaint.  In *Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir. 1996), the Fourth Circuit found that mere conclusory statements by the plaintiff did not support an award of emotional damages.  *Id.* at 1254.  Here, although the damage claim rests in a large part on the testimony of the plaintiff, Plaintiff has provided some additional testimony from other witnesses.

At this stage, the court declines to grant the motion to strike the emotional damages and hereby denies the motion to strike emotional damages without prejudice. The court acknowledges that Plaintiff offers relative little evidence to support his claim of emotional damages but notes that the evidence is sufficient to survive the motion to strike.  The court may revisit the question prior to the submission of the issue to the jury.

The court grants the motion to strike as to the testimony of Dr. Yates.  Although it appeared at oral argument that neither party intends to use Dr. Yates' testimony, the court hereby grants the motion to strike as to the testimony of Dr. Yates.

### III.    SUMMARY JUDGMENT

### a. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when a moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted), and summary judgment should be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. *McKinney v. Bd. of Trustees of Maryland Community College*, 955 F.2d 924, 928 (4th Cir. 1992). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### b.  Discussion

#### i.  42 U.S.C. § 1983

Defendants now move for summary judgment on Plaintiff's § 1983 claims. Defendants argue that summary judgment is appropriate because (1) the actions of the officers were reasonable under the Fourth Amendment and (2) the officers are entitled to summary judgment based on the application of qualified immunity. Further, Defendants argue that the Sheriff of Sumter County is not liable under § 1983 in either his personal or official capacity.

To state a cause of action under § 1983, a plaintiff must allege that (1) some person deprived him of a federal right and (2) that the person who deprived him of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). In this case, Plaintiff alleges a violation of the Fourth Amendment which guarantees "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable seizures." U.S. Const. amend. IV. Plaintiff alleges that the Defendants' conduct during the incident in question—from the beginning of the encounter until Plaintiff was free to go—violated his Fourth Amendment rights in various ways.

First, Plaintiff argues that the initial stop violated his right to be free from seizure. The police may conduct an investigatory stop where the officer may "point to a reasonable suspicion of criminal activity." *Terry v. Ohio*, 392 U.S. 1, 21–212 (1968). A court should evaluate the reasonableness of a stop based on an objective standard. *Id.* Plaintiff argues that the police should not have acted on the information that Gloria Jenkins provided to them, and because they did, they acted without reasonable suspicion. Plaintiff asserts that the police should have known that she Jenkins unreliable and only using the police to obtain money. Defendants argue that they had used Jenkins as an informant in the past—and as recently as the night before—and that they had reasonable suspicion to stop the car based on her tip.

Because Plaintiff argues that the deputies lacked reasonable suspicion to conduct the first stop, he argues the subsequent "pat down" and dog sniff were also unconstitutional. *See Terry*, 392 U.S. at 27 (finding that an officer may conduct a pat down where he has reason to believe the suspect is armed and dangerous); *Illinois v.*

7

*Cabellas*, 543 U.S. 405, 407–08 (2005) (holding that police may use a narcotics dog to sniff a vehicle, but only were the subject has been lawfully detained).

Plaintiff next argues that the duration of the stop was unreasonable.   In examining the reasonableness of a particular seizure, a court should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985).  Plaintiff alleges that the stop took two to three hours and therefore exceeded constitutional boundaries.  Defendants argue that the search was constitutional, and assert that the search was no more than forty minutes long.

Finally, Plaintiff argues that the defendants conducted an unconstitutional strip search of Plaintiff.  When examining police conduct during a *Terry* stop, courts have determined that a strip search is unreasonable.  *See, e.g.*, *DiLoreto v. Borough of Oaklyn*, 744 F. Supp. 610, 622 (D.N.J. 1990) ("A strip search to look for weapons . . . is patently unreasonable.").  A public strip search would not be justified in the context of a search incident to arrest.  *See Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) ("[T]he interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street . . . .").  "A strip search under federal law includes the exposure of a person's naked body for the purpose of a visual or physical examination." *Amachei v. West*, 237 F.3d 356, 363 (4th Cir. 2001).

Defendants argue that they are entitled to qualified immunity.  Qualified immunity serves to "provide[] ample protection to all [public officials] but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In

8

*Harlow v. Fitzgerald*, the Supreme Court of the United States set forth objective standards for a qualified immunity defense, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982). The Fourth Circuit Court of Appeals has held that an official's entitlement to qualified immunity is based on an "objective reasonableness" standard, explaining that "the very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). In assessing whether an official is entitled to qualified immunity, courts go through a two-pronged analysis—under the first prong, courts determine "whether a constitutional right would have been violated on the facts alleged," and under the second prong, courts decide whether that constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).[3]

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that law." *Katz*, 533 U.S. at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

---

[3] Since its decision in *Saucier*, the Supreme Court has held that the two-step procedure need not be followed rigidly, noting that "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

The court is constrained to find at this stage in the case that there are genuine issues of material fact that prevent the court from granting judgment as a matter of law on the § 1983 claim. The court observes, however, that on the record currently before it the facts and law dictate that the initial stop and seizure of the plaintiff was reasonable as a matter of law. The court finds that under the doctrine of qualified immunity, the officers acted reasonably in stopping the plaintiff based on the tip from the informant Gloria Jenkins. Though no drugs were found, the officers had used Jenkins as an informant in the past and reasonably believed that the information she gave them this time was true. In other words, the officers did not transgress a "bright line" in acting on Jenkins' tip, but rather, at most, made a "bad guess" and as such the initial decision to stop Plaintiff was objectively reasonable. Therefore, plaintiff's argument that he was falsely arrested fails as matter of law. On the other hand, the court notes that the manner in which the seizure and investigation were carried out remains contested. Namely, the parties dispute whether a strip search occurred. As a result, the case will proceed forward with the allegations involving the strip search as the only remaining issues for trial.

ii. *Sheriff of Sumter County and § 1983 claims.*

Plaintiff also includes the Sheriff of Sumter County as a defendant in his § 1983 cause of action. In order to hold the Sheriff liable in his individual capacity, a plaintiff must demonstrate some direct involvement on the part of the Sheriff. *See Rizzo v. Goode*, 423 U.S. 362, 373–76 (1976); *Davis v. Dept. of Soc. Servs.*, 941 F.2d 1206 (4th Cir. 1991) (unpublished table decision). The Plaintiff cannot maintain an action based solely

on a theory of supervisor liability, or *respondeat superior*. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). Rather, a supervisor may only be held liable if the plaintiff demonstrates the following:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).

Plaintiff argues that the Sheriff is liable due to inaction or omissions and because of the custom of failing to maintain proper records concerning informants. Defendant argues that the Plaintiff has not demonstrated any direct involvement of the Sheriff and notes that Plaintiff has not offered any evidence to show that the Sheriff had any knowledge of similar prior incidents.

The court hereby grants the Defendants' motion for summary judgment as to the Sheriff on the § 1983 cause of action. The court notes that Plaintiff has offered no evidence to demonstrate that the Sheriff was involved personally in the incident at question, and accordingly, the Sheriff cannot be held personally liable for any direct conduct. Moreover, the court also finds that the Sheriff cannot be held liable under the theory of supervisor liability outlined in *Shaw*. The plaintiff has not provided any evidence to indicate that similar instances of unauthorized strip searches occurred in the

past.  As a result, there is no evidence of inaction on the part of the Sheriff such that he allowed unauthorized behavior to continue.  The plaintiff relies solely on evidence from the incident in question, which is insufficient to support the cause of action.  *See Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) ("Ordinarily, [a plaintiff] cannot satisfy his burden of proof [in a supervisor liability case] by pointing to a single incident or isolated incidents.").

### iii.  State Law Causes of Action

The Plaintiff complaint includes state law causes of action alleging false imprisonment,[4] negligence or gross negligence, defamation,[5] assault and battery,[6] and negligent hiring or supervision.[7]  Defendants have moved for summary judgment on each of these claims and reiterate their argument that they had probable cause to conduct the stop and that the stop was conducted in a reasonable manner.

Under the South Carolina Tort Claims Act, the agency, rather than the individual, is the proper defendant in suits against governmental agencies.  S.C. Code § 15-78-70(c) (2005).  Accordingly, an employee of a governmental entity who commits a tort while

---

[4] "In order to recover under a theory of false imprisonment, the complainant must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful." *Jones by Robinson v. Winn-Dixie Greenville, Inc.*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App. 1995) (citing *Andrews v. Piedmont Air Lines*, 297 S.C. 367, 377 S.E.2d 127 (Ct. App. 1989)).

[5] "To prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *McBride v. Sch. Dist. of Greenville Cnty.*, 389 S.C. 546, 560, 698 S.E.2d 845, 852 (Ct. App. 2010) (citing *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002)).

[6] "A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient; an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 230, 317 S.E.2d 748, 754(Ct. App. 1984) (citing *Herring v. Lawrence Warehouse Co.*, 222 S.C. 226, 72 S.E.2d 453 (1952)).

[7] "Negligent hiring cases 'generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties.'" *Kase v. Ebert*, 392 S.C. 57, 63, 707 S.E.2d 456, 459 (Ct. App. 2011) (quoting *Doe v. ATC*, 367 S.C. 199, 206, 624 S.E.2d 447, 450 (Ct. App. 2005)).

acting within the scope of his official duty is generally not liable under state law, and the plaintiff must sue the governmental agency itself.  If, however, the plaintiff demonstrates that "the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," then the governmental agency is not liable, and the employee is personally liable.  S.C. Code § 15–78–70(b); *see also id.* § 15–78–60(17).

First, the court hereby grants the motion for summary judgment as to the negligent supervision cause of action.  As noted above in the context of supervisor liability under § 1983, the plaintiff has not demonstrated a course of conduct sufficient to put the Sheriff on notice that its deputies were acting unlawfully.   As such, the key components necessary to maintain this cause of action—"knowledge of the employer and foreseeability of harm to third parties"—are both missing.  *See Kase v. Ebert*, 392 S.C. 57, 63, 707 S.E.2d 456, 459 (Ct. App. 2011) (quoting *Doe v. ATC*, 367 S.C. 199, 206, 624 S.E.2d 447, 450 (Ct. App. 2005)).

As to the remaining causes of action the court is constrained to find at this stage in the case that there are genuine issues of material fact that prevent the court from granting judgment as a matter of law.  Moreover, the remaining contested issues involve conduct that may or may not fall within the exception to the S.C. Torts Claims Act under which an individual may be held liable.  Accordingly, at this stage, both the Sheriff of Sumter County as a governmental entity and the individual deputies are defendants for the remaining state law causes of actions.

13

## IV.    CONCLUSION

In summary, the court denies the motion to strike emotional damages but grants the motion to strike the testimony of Dr. Yates.  The court denies the motion for summary judgment on the § 1983 cause of action, but notes that the only issue remaining for trial concerns the conduct surrounding the alleged strip search.  The court grants the motion for summary judgment on the § 1983 claims as to the defendant the Sheriff of Sumter County.  The court also grants the motion for summary judgment as to the negligent supervision cause of action but denies the motion on the remaining causes of actions under South Carolina law.

The trial of plaintiff's claim shall occur during the March and April 2012 term of court with jury selection set for 9:30 a.m. Thursday, March 1, 2012.


IT IS SO ORDERED.

February 22, 2012                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                     United States District Judge

14